UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KRYSTAL LYNN LITTLEFIELD, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | )  No. 1:16-cv-486-JCN |
| | ) |
| NANCY A. BERRYHILL, | ) |
| ACTING COMMISSIONER, | ) |
| SOCIAL SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant | ) |

## MEMORANDUM OF DECISION[1]

In this action, Plaintiff Krystal Lynn Littlefield seeks disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Defendant, the Social Security Administration Acting Commissioner, found that Plaintiff has severe impairments but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, the Court affirms the administrative decision.

### THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the May 20, 2015, decision of the

---

[1] The parties have filed a consent authorizing the undersigned to conduct any and all proceedings and enter a final order and judgment in this matter.

Administrative Law Judge (ALJ) (ECF No. 10-2).[2] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of depression, post-traumatic stress disorder, and polysubstance dependence on replacement therapy for opioid dependence. (Decision ¶¶ 3, 4.) The ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels with the following limitations: she can understand, remember and carry out simple, repetitive instructions, and would need to avoid interaction with the general public, but can interact appropriately with co-workers and supervisors. (*Id.* ¶ 5.) Plaintiff's RFC does not enable Plaintiff to perform her past relevant work, but the ALJ found that a person with Plaintiff's RFC and vocational profile could perform other substantial gainful activity. (*Id.* ¶ 6, 10.) Based on the findings, the ALJ determined that Plaintiff was not under a disability between her alleged onset date of March 1, 2010, and May 20, 2015. (*Id.* ¶ 11.)

### PLAINTIFF'S STATEMENT OF ERRORS

Plaintiff argues the ALJ erred because she failed to give controlling weight to the opinion of Plaintiff's treatment providers and erroneously asserted that the record did not contain medical source statements suggesting Plaintiff is disabled or specifying the degree of her limitations. (Statement of Errors at 1 – 2, ECF No. 12.) Plaintiff also contends the

---

[2] The Appeals Council found no reason to review the ALJ's decision. (R. 1, ECF No. 10-2.)

ALJ erred because she failed to give greater weight to evidence from other sources, including information provided by Terry Hallett (Ex. 10F), a woman for whom Plaintiff worked in a volunteer capacity, and to records prepared by Plaintiff's therapists. (*Id.* at 2 – 4.) Plaintiff further maintains that the ALJ improperly evaluated the significance of Plaintiff's decision not to take certain prescribed medications and her success with group and individual therapy. (*Id.* at 4 – 6.) Finally, Plaintiff challenges the ALJ's decision to rely on the framework of the Guidelines at step 5 of the sequential evaluation process. (*Id.* at 6.)

## DISCUSSION

### A. Standard of Review

The Court must affirm the administrative decision provided that the ALJ applied the correct legal standards and provided that the decision is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**B. Analysis**

*1.    The record evidence*

Plaintiff argues the ALJ failed to weigh properly the opinions of three medical sources: Joseph Deitz, M.D., Louisa Barnhart, M.D., and Patricia Kolosowski, Ph.D. (Statement of Errors at 1 – 2.) Plaintiff additionally contends that the evidence provided by other sources, specifically therapists Tammy Trask and Tanya Johanson, and witness Terry Hallet, persuasively demonstrates Plaintiff's inability to perform substantial gainful activity. (Statement of Errors at 2 – 4.) Plaintiff describes her symptoms as forgetfulness, lack of focus, and anxiety. (R. 48 – 49.) She becomes very anxious when in the presence of a lot of people. (R. 49 – 50.)

On August 20, 2013, Dr. Kolosowski, a consultant for Maine Disability Determination Services, assessed Plaintiff to have a Global Assessment of Functioning (GAF) score of 55 (moderate symptoms and limitations), and determined that Plaintiff's ability to adapt to work is unknown. (Ex. 4F, R. 1113.) Plaintiff has received treatment from the Family Medicine Institute (Dr. Zurbach, Ex. 5F), and Kennebec Behavioral Health (Dr. Deitz, Exs. 6F – 10F). Dr. Barnhart, of Kennebec Behavioral Health, performed a consultative exam, and in July 2014, completed the "Aspire paperwork" for Plaintiff not to work for three months. (R. 1123.) In her treatment notes, she suggested Plaintiff might be a candidate for disability. (Ex. 5F, R. 1120 – 1124.) Treatment records reflect consistent GAF scores of 48 to 50 (serious symptoms and limitations). The records, however, do not contain a treating source statement describing Plaintiff's impairment in

4

functional terms. [3]

In a reconsideration decision issued August 26, 2013, Maine Disability Determination Services consultant John Warren, Ed.D., opined that Plaintiff's mental health impairments were not severe. (Ex. 5A, R. 84 – 86.) Following the reconsideration decision, on July 9, 2014, Nancy Zurbach, M.D., performed a psychiatric evaluation. (Ex. 5F.) Plaintiff was diagnosed with attention deficit disorder, which Dr. Zurbach characterized as "likely longstanding." (R. 1122.) Dr. Zurbach recommended the addition of Clonidine to treat Plaintiff's symptoms (*id.*), completed "Aspire paperwork" ordering Plaintiff not to work for three months, and recommended that Plaintiff "probably … apply for disability." (R. 1123.)

In the decision, the ALJ identified Dr. Zurbach as Plaintiff's "new psychiatrist," and observed that as of the February 2015 hearing date, Plaintiff had not seen the provider "for more than 7 months" and had not seen her primary provider for more than five months. (R. 23.) The ALJ noted that a claimant must follow prescribed treatment if the treatment can restore her ability to work. (*Id.*, citing 20 C.F.R. § 404.1530(b), 416.930(b).) [4]

---

[3] To the extent Plaintiff asserts that her providers offered opinion statements about her functional capacity, Plaintiff evidently relies on GAF scores found in her treatment records. (Statement of Errors at 2.) GAF scores, even if consistent over time, are not a substitute for a treating source statement that addresses a claimant's limitations in functional language. *Grover v. Colvin*, No. 2:15-CV-00204, 2016 WL 183645, at *7 (D. Me. Jan. 14, 2016) (citing *LeBlanc v. Colvin*, No. 2:13-CV-00348, 2014 WL 5431567, at *4 (D. Me. Oct. 24, 2014) (observing that "[a] GAF score, standing alone, does not necessarily indicate an inability to work or to perform specific work-related functions" and that "a GAF score is nothing more than a snapshot of a particular moment") (citations and internal quotation marks omitted)).

[4] The ALJ also noted that Plaintiff's adherence to her Suboxone plan was inconsistent. Plaintiff argues that the evidence shows that she was weaning herself from Suboxone and that, rather than reflecting misconduct, her efforts should be regarded in a positive light. (Statement of Errors at 4 – 6.) Plaintiff also notes that she experienced success in group and individual therapy and is therefore a person who is compliant with her treatment plan. (*Id.* at 5 – 6.) While the record might include some conflicting evidence regarding

5

At the hearing, the ALJ considered the testimony of Plaintiff and Terry Hallett, a member of Plaintiff's community, who has provided Plaintiff with a volunteer work opportunity. According to Ms. Hallett, Plaintiff volunteers in her consignment store; Ms. Hallett, however, has not offered Plaintiff a paid position because Plaintiff lacks sufficient capacity or productivity for such position. (R. 64 – 65.) Plaintiff testified that when she is at the store, she remains there all day and at times, operates the cash register. (R. 46, 56 – 57.) Ms. Hallett reports that Plaintiff occasionally is at the store four days in a week.[5] (R. 63.)

After review of the medical record, the ALJ concluded that the treating source records did not establish a disability,[6] and that the 48 – 50 GAF scores did not reliably reflect a serious limitation in Plaintiff's ability to function given that the findings of the

---

Plaintiff's compliance, on this record, the ALJ would be permitted to infer that Plaintiff's lapses in treatment and medication regimen are evidence that Plaintiff's impairments are not as debilitating as she claims. (R. 23.) "Resolving conflicts in the evidence and drawing inferences from the record are the ALJ's prerogatives." *Smith v. Colvin*, No. 15-2521, 2016 WL 4757403, at *1 (1st Cir. Aug. 30, 2016) (citing *Rodriguez v. Sec'y of HHS*, 647 F.2d 218 (1st Cir. 1981)).

[5] According to a medical record, Plaintiff reported working in the store seven days per week. (Ex. 10F, R. 1499.)

[6] The ALJ observed:

> As for the opinion evidence, the record does not contain any medical source statements from treating physicians indicating that the claimant is disabled or even has greater limitations than those determined in this decision.

(R. 25.) With respect to the therapists (Trask and Johanson), the ALJ considered reports of therapy sessions. (R. 22.) Although the ALJ did not discuss the therapy notes in detail, as "other sources" the ALJ was not required to discuss the records, but simply explain the weight given to any opinions. Titles II & XVI: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Med. Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental & Nongovernment, SSR 06-03P (S.S.A. Aug. 9, 2006), 2006 WL 2329939, at *6. Plaintiff has not pointed to any opinion evidence contained in the therapy records that is inconsistent with the ALJ's decision. Furthermore, the ALJ's discussion reflects that she was aware of the therapists as they are identified by name in the decision. (R. 23.)

mental status examination, Plaintiff's activities and the longitudinal record were consistent with a mild to moderate limitation. (R. 26.) The evidence cited by the ALJ included the lack of a disability source statement from Dr. Zurbach in support of Plaintiff's application, the limited duration of Dr. Zurbach's no work order, which suggested that Plaintiff "would be capable of performing work activity after that 3-month period had expired" (R. 25), Plaintiff's ability to perform tasks, occasionally while she was alone, at Ms. Hallett's consignment store, and the fact Plaintiff obtained a certified nurses' aide certificate after the alleged onset date. (R. 22, 27.)

The evidence cited by the ALJ, the longitudinal medical record, and Dr. Warren's opinion[7] constitute substantial evidence to support the ALJ's residual functional capacity assessment. The Court recognizes that Dr. Zurbach made her diagnosis of attention deficit disorder after Dr. Warren issued his opinion regarding the level of Plaintiff's functioning. Dr. Zurbach, however, did not offer a source statement containing an opinion about Plaintiff's baseline functional capacity. Under the circumstances, Dr. Zurbach's diagnosis does not invalidate Dr. Warren's opinion, nor require the ALJ to obtain a further assessment from Dr. Warren. In short, the ALJ's decision is supported by substantial evidence on the record, and the ALJ did not resolve any issue that required further development of the record.

---

[7] The fact that Dr. Warren did not review Dr. Zurbach's evaluation report does not make his opinion incapable of providing substantial evidence in support of the ALJ's decision. *See*, *e.g.*, *Swormstedt v. Colvin*, No. 2:13-CV-00079, 2014 WL 1513347, at *5 (D. Me. Apr. 16, 2014).

### 2. ALJ's reliance on the framework of the Guidelines at step 5

Plaintiff argues that without the assistance of a vocational expert the ALJ could not resolve at step 5 whether Plaintiff could adjust to other substantial gainful activity. (Statement of Errors at 6.) Defendant contends the use of the Guidelines was appropriate because Plaintiff's non-exertional limitations would not significantly erode the full range of unskilled work. (Response at 18 – 19, citing *Garcia-Martinez v. Barnhart*, 111 F. App'x 22 (1st Cir. 2004)).

The nature of the work permitted by Plaintiff's RFC, and whether such work exists in substantial numbers in the national economy, are determinations made at step 5 of the sequential evaluation process. The ALJ's residual functional capacity finding is consistent with an application of the Guidelines at step 5.

At step 5 of the evaluation process, the burden shifts to the Defendant to establish that the jobs the claimant can perform exist in the national economy in significant numbers, giving particular attention to the claimant's age, education, work experience, and residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4)(v), (g)(1), 416.920(a)(4)(v), (g)(1); *Goodermote v. Sec'y of HHS*, 690 F.2d 5, 7 (1st Cir. 1982). This burden is typically addressed through a combined reliance on the Medical – Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, and the testimony of a vocational expert. *Goodermote*, 690 F.2d at 7. The Guidelines, however, address only exertional limitations. Because the Guidelines are based on a claimant's exertional capacity, they "can only be applied when claimant's nonexertional limitations do not significantly impair claimant's ability to perform at a given exertional level." *Rose v. Shalala*, 34 F.3d 13, 19 (1st Cir. 1994).

Nevertheless, "[i]f a non-strength impairment, even though considered significant, has the effect only of reducing that occupational base marginally, the [Guidelines] remain[] highly relevant and can be relied on exclusively to yield a finding as to disability." *Ortiz v. Sec'y of HHS*, 890 F.2d 520, 524 (1st Cir. 1989).

Plaintiff's residual functional capacity and vocational profile permit exclusive reliance on the Guidelines as a basis for decision making at step 5. The ALJ supportably determined that Plaintiff has the capacity to perform simple, repetitive work, in any exertional category, provided she does not have to work with the public. The ALJ specifically noted, "[Plaintiff's] mental impairments limit her to simple, unskilled employment, but do not preclude her ability to follow simple instructions, respond appropriately to supervisors and coworkers and to deal with workplace changes." (R. 29.) The stated non-exertional limitations do not "significantly interfere with the performance of the full range of unskilled work" and thus are compatible with application of the Guidelines at step 5. *Garcia-Martinez v. Barnhart*, 111 F. App'x 22 (1st Cir. 2004); *Swormstedt v. Colvin*, No. 2:13–CV–00079, 2014 WL 1513347, at *6 (D. Me. Apr. 16, 2014). The ALJ, therefore, did not err when she relied on the Guidelines at step 5.

## CONCLUSION

Based on the foregoing analysis, the Court affirms the administrative decision.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 28th day of June, 2017.